**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| DOUGLAS SNYDER, derivatively on behalf of Nominal Defendant RCI HOSPITALITY HOLDINGS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ERIC S. LANGAN, BRADLEY CHHAY, TRAVIS REESE, YURA BARABASH, ELAINE MARTIN, ARTHUR ALLAN PRIAULX, and LUKE LIROT,<br><br>Defendants,<br><br>and<br><br>RCI HOSPITALITY HOLDINGS, INC.,<br><br>Nominal Defendant. | Case No.<br><br>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Douglas Snyder ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of Nominal Defendant RCI Hospitality Holdings, Inc. ("RCI" or the "Company"), against certain current and former members of its Board of Directors (the "Board") and certain of its executive officers, seeking to remedy Defendants' breaches of fiduciary duties. Plaintiff's allegations are based on personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information: filings by RCI with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, investor conference transcripts, and matters of public record, including *People v. Eric Langan, et al.*, Indictment No. 73671/2025 (Sup. Ct. N.Y. Cnty.) (the "Indictment") and the related securities class action captioned *Hernandez v. RCI Hospitality Holdings, Inc., et al.*, No. 4:25-cv-04477 (S.D. Tex.) (the "Securities Class Action").

## I. NATURE AND SUMMARY OF THE ACTION

1. RCI is a holding company that operates live adult entertainment venues (i.e. strip clubs), bars, and restaurants throughout the United States through its wholly owned subsidiaries. Its most profitable and highest-revenue segment is "Nightclubs," which operates under approximately two dozen brands, with Rick's Cabaret as the flagship brand. RCI's subsidiaries include Peregrine Enterprises, Inc. (d/b/a Rick's Cabaret), RCI Dining Services (37th Street), Inc. (d/b/a Vivid Cabaret), and RCI 33rd Street Ventures, Inc. (d/b/a Hoops Cabaret and Sports Bar) (collectively, the "NYC Strip Clubs").

2. As a component of its highest-margin service revenue, RCI charges a 20% to 25% service surcharge in addition to the face value of Dance Dollars, its in-house currency. Customers who wish to pay by credit card purchase Dance Dollars and redeem them for entertainment, including private dances. In the State of New York, Dance Dollars and the associated surcharge constitute an "admission charge" to a "place of amusement" and are therefore subject to the combined New York sales tax rate of 8.875%.

3. Because RCI's lawful operation of its strip clubs is essential to maintaining its business licenses and avoiding legal and reputational harm, RCI repeatedly assured investors that it had developed "comprehensive" policies to ensure its clubs operated in "conformance with local, state and federal laws," that it "continually" monitored conduct at its clubs, and that those policies were "reasonably effective." RCI also assured investors that its financial statements complied with U.S. Generally Accepted Accounting Principles ("GAAP").

4. Those assurances were false. From at least 2010 through September 16, 2025, RCI's CEO Eric L. Langan ("Langan") and CFO Bradley Chhay ("Chhay") orchestrated an illicit tax fraud and bribery scheme designed to evade sales taxes owed in New York (the "Tax Fraud Scheme"). RCI willfully failed to collect and remit at least $8 million in sales tax owed on Dance

Dollars sold at the NYC Strip Clubs. To conceal the scheme, Langan, Chhay, and others repeatedly bribed Alton Plunkett, an auditor with the New York State Department of Taxation and Finance ("DTF"), for favorable audit settlements. The bribes took the form of free entertainment at RCI-owned strip clubs (including private dances valued at up to $5,000 per day), complimentary hotel stays, and restaurant outings. Defendants concealed the bribes by causing RCI to falsify its books and records, recording the bribe payments as "promotional" expenses.

5. The truth emerged on September 16, 2025, when the New York Attorney General announced and unsealed the Indictment charging RCI, Langan, Chhay, the NYC Strip Clubs, and others with criminal tax fraud, conspiracy, bribery, and related crimes arising from the Tax Fraud Scheme.[1] On this news, RCI's common stock fell by more than $8.52 per share, or roughly 25%, over two consecutive days to close at $25.80 on September 17, 2025. These revelations precipitated the filing of the Securities Class Action against RCI, Langan, and Chhay.

6. Rather than hold the responsible fiduciaries accountable, the Board rewarded them. Approximately two months after the Indictment, on November 28, 2025, RCI announced that Langan and Chhay were "stepping down" from their positions, but that both would remain employed, would "continue to receive the same compensation under their previous titles," and would "continue to vest in their previously awarded stock option grants under the Company's 2022 Stock Option Plan."

7. These changes were nominal. Even though Langan and Chhay had been criminally indicted for orchestrating a decade-long fraud against the Company, the Board did not terminate either of them for cause. And the Compensation Committee declined to exercise the Company's

[1] The Indictment is attached hereto as Exhibit 1.

express contractual right under the governing incentive plan to force the forfeiture of Langan's and Chhay's outstanding options, and instead allowed those options to continue vesting.

8. On April 6, 2026, Plaintiff served a written litigation demand on the Board (the "Demand"), demanding that the Board investigate and take action to remedy the breaches of fiduciary duty described herein, as required by Texas law. The Board wrongfully refused: it has failed to conduct any good-faith, independent investigation, and it has publicly dismissed the Indictment as "baseless." Plaintiff therefore brings this action to hold Defendants accountable for the substantial harm their misconduct has caused, and continues to cause, RCI.

## II. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff and each Defendant.

10. This action is not a collusive one to confer jurisdiction on a court of the United States that it would not otherwise have.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because RCI maintains its principal executive offices in this District at 10737 Cutten Road, Houston, Texas 77066, a substantial part of the acts and omissions complained of herein occurred in this District, and the related Securities Class Action is pending in this District.

## III. PARTIES

### Plaintiff

12. Plaintiff is a beneficial owner of approximately 150 shares of RCI common stock. He has continuously held RCI common stock at all times relevant to the wrongdoing complained of herein and remains a current RCI shareholder. He is a citizen of South Carolina.

**Nominal Defendant**

13. Nominal Defendant RCI Hospitality Holdings, Inc. is a Texas corporation with its principal executive offices located at 10737 Cutten Road, Houston, Texas 77066. RCI common stock trades on the Nasdaq exchange under the ticker symbol "RICK." RCI is named as a nominal defendant solely in a derivative capacity.

**Director Defendants**

14. Defendant Eric S. Langan ("Langan") has served as RCI's Chief Executive Officer and President, and as a director, since 1999. Langan served as Chairman of the Board until he resigned that position on January 29, 2026, and he continues to serve as a director. As CEO and President, Langan was responsible for the day-to-day management of the Company and its subsidiaries, including the NYC Strip Clubs, of which he served as president. Langan is a citizen of Texas.

15. Defendant Bradley Chhay ("Chhay") has served as RCI's Chief Financial Officer since September 2020 and as its Principal Accounting Officer. As CFO, Chhay was chiefly responsible for managing RCI's financial functions, accounting systems, and financial reporting, and he served as CFO of the NYC Strip Clubs. Chhay is a citizen of Texas.

16. Defendant Travis Reese ("Reese") has served as RCI's Executive Vice President and as a director since 1999. Reese is a citizen of Texas.

17. Defendant Yura Barabash ("Barabash") has served as a director of RCI since 2017. During the relevant period, Barabash served as a member of the Board's Compensation Committee (the "Compensation Committee"). Barabash is a citizen of Florida.

18. Defendant Elaine Martin ("Martin") has served as a director of RCI since 2019. During the relevant period, Martin served as a member of the Compensation Committee. Martin is a citizen of Texas.

19. Defendant Arthur Allan Priaulx ("Priaulx") has served as a director of RCI since 2019. During the relevant period, Priaulx served as a member of the Compensation Committee. Priaulx is a citizen of Connecticut.

20. Defendant Luke Lirot ("Lirot") has served as a director of RCI since 2007. During the relevant period, Lirot served as a member of the Compensation Committee. Lirot is a citizen of Florida.

21. Defendants Langan, Reese, Barabash, Martin, Priaulx, and Lirot are referred to herein as the "Director Defendants." The Director Defendants and Defendant Chhay are collectively referred to herein as the "Individual Defendants."

## IV. DUTIES OF THE INDIVIDUAL DEFENDANTS

### A. Fiduciary Duties

22. By reason of their positions as officers and/or directors of RCI, and because of their ability to control the business and corporate affairs of RCI, at all relevant times the Individual Defendants owed RCI and its shareholders fiduciary duties of good faith, loyalty, care, and candor, and were required to use their utmost ability to control and manage RCI in a fair, just, honest, and equitable manner. The Individual Defendants were required to act in furtherance of the best interests of RCI and its shareholders and not in furtherance of their personal interests. Each director and officer of the Company owes to RCI and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

23. The Individual Defendants, because of their positions of control and authority as directors and/or officers of RCI, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial,

and directorial positions with RCI, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

24. To discharge their duties, the officers and directors of RCI were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of RCI were required to, among other things:

> (a) Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;
>
> (b) Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;
>
> (c) Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and
>
> (d) When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

**B. The Compensation Committee**

25. The charter for the Compensation Committee, effective since June 2014, provides that the members are responsible for the "evaluation and compensation of the Corporation's Chief Executive Officer ('CEO'), President and other senior executives, and to discharge the responsibilities of the Committee under applicable rules and regulations.

26. Among other things, the Compensation Committee is responsible for administering incentive compensation plans, including:

> 9. Administer any incentive programs, and make the determinations and interpretations and take other such action as contemplated by said programs for the granting authorities, insofar as applicable to employees who are subject to the reporting requirements of Section 16 under the Securities Exchange Act of 1934

> with respect to equity securities of the Corporation, and other such eligible employees as may be from time to time referred to the Committee by the CEO or President.

27. Thus, the Compensation Committee is responsible for administering RCI Hospitality Holdings, Inc. 2022 Stock Option Plan (the "2022 Plan"). Section 17 of the 2022 Plan ("Forfeiture") vested the Compensation Committee with an express, discretionary power to force the forfeiture of a participant's stock options upon a finding of fraud or dishonesty. It provides, in relevant part:

> Notwithstanding any other provisions of this Plan, if the Committee finds by a majority vote after full consideration of the facts that an Eligible Person, before or after termination of his employment with the Company or an Affiliate for any reason (a) committed or engaged in fraud, embezzlement, theft, commission of a felony, or proven dishonesty in the course of his employment by the Company or an Affiliate, which conduct damaged the Company or Affiliate, . . . the Eligible Person shall forfeit all outstanding Options, including all exercised Options and other situations pursuant to which the Company has not yet delivered a stock certificate.

28. Section 5(f) of the 2022 Plan further provides that "[a]ny Option which has not vested at the time the Optionee ceases Continuous Service for any reason other than death, disability or retirement shall terminate upon the last day that the Optionee is employed by the Company." Accordingly, unvested options automatically terminate when the grantee is no longer an employee of the Company.

## V. SUBSTANTIVE ALLEGATIONS

### A. Background: RCI's Operations and Dance Dollars

29. RCI operates two reportable segments: Nightclubs and Bombshells. The Nightclubs segment is the dominant driver of RCI's financial performance. In fiscal year 2025, the Nightclubs segment generated approximately $242.5 million of the Company's total revenues of approximately $279.4 million, or roughly 86%.

30. Its highest margin revenue source is service revenues, which includes Dance Dollars. Dance Dollars accounted for approximately 40% to 46% of the Nightclubs segment's total sales mix at all relevant times. In New York State, Dance Dollars and the associated 20% to 25% surcharge qualify as an "admission charge" to a "place of amusement" subject to the combined 8.875% New York sales tax rate.

**B. The Tax Fraud Scheme**

31. As alleged in detail in the Indictment, from at least 2010 through 2024, RCI willfully refused to collect and remit at least $8 million in sales tax on Dance Dollars and the associated service charges sold at the NYC Strip Clubs. To conceal and perpetuate the ongoing sales tax fraud, Langan, Chhay and other conspirators agreed to provide bribes to DTF auditor Alton Plunkett, and in exchange Plunkett agreed to and did settle audits of the NYC Strip Clubs for amounts substantially below the taxes actually owed.

32. According to the Indictment, from 2012 through 2023, RCI provided Plunkett with at least 13 complimentary multi-day trips to strip clubs in and around Miami, Florida, including Tootsie's Cabaret, on which RCI's controller Timothy Winata accompanied Plunkett and provided him with complimentary hotel stays, restaurant meals, and up to several thousand dollars' worth of private dances per day at RCI-owned strip clubs. From 2010 through 2021, Plunkett was provided similar bribes on at least 10 occasions at the NYC Strip Clubs. Langan, Chhay, and Ahmed "Ed" Anakar authorized and directed Winata to travel to New York and Florida to bribe Plunkett.

33. Internal communications quoted in the Indictment confirm that the underpayment of sales taxes was deliberate and known to Langan and Chhay. On April 12, 2018, Langan texted Anakar that the Company needed "to talk about New York and dance dollars" because it was

"going to be hit by 3m in sales taxes soon." When Winata proposed the lawful solution of raising the price of Dance Dollars to cover the sales tax, Langan rejected it, stating on October 5, 2018:

> We can't Tim. We need to change the way we book this shit. So we only book the Net and not all of the dance dollars.

34. Chhay likewise personally directed the scheme after becoming CFO. On June 13, 2023, after the auditor asked to meet in Florida to discuss an audit result, Chhay emailed Anakar under the subject line "Sales Tax Florida Guy," writing: "Its still in audit under that guys purview. ***Historically hes 1/3 of the initial he sends. So 200k - try to land at 70k.*** Once this is done 37th street should be out of the way for a while if we can get him to write us in the good guys bucket list." Chhay then texted Winata, "Try to get him under 70." On September 1, 2023, Chhay texted Langan and Anakar that "Tim got the guy to $47k in [V]ivid New York."

35. On October 6, 2023, and again on January 10, 2024, Langan emailed Winata a single word, "Approved" - authorizing RCI to reimburse Winata for the costs of trips used to bribe Plunkett.

36. The bribes were concealed through the falsification of RCI's business records, which recorded the payments to Plunkett as "promo," "promotion," "promotional," "misc.," or "miscellaneous" expenses. Defendants also personally executed the fraudulent settlements: Langan signed a Statement of Proposed Audit Change settling a Vivid Cabaret audit for $838,888.82 on December 4, 2018; and Chhay signed Statements of Proposed Audit Change settling a Hoops Cabaret audit for $200,773.91 on January 18, 2022 and a Vivid Cabaret audit for $47,342.92 on September 20, 2023. Each of these audit changes recorded amounts that were far below the true liability.

**C. The Individual Defendants Caused RCI To Issue Materially False and Misleading Statements**

37. The following statements were materially false and misleading when made.

38. **Risk Disclosures and Compliance Policy Statements.** The RCI 10-Ks warned only of hypothetical risks, stating that "[a]ctivities or conduct at our nightclubs may cause us to lose necessary business licenses, expose us to liability, or result in adverse publicity, which may increase our costs and divert management's attention from our business," and that "[i]llegal activities or conduct at any of our nightclubs may result in negative publicity or litigation." To purportedly mitigate those risks, the RCI 10-Ks represented:

> We have developed comprehensive policies aimed at ensuring that the operation of each of our nightclubs is conducted in conformance with local, state and federal laws. We have a "no tolerance" policy on illegal drug use in or around our facilities. We continually monitor the actions of entertainers, waitresses and customers to ensure that proper behavior standards are met. However, such policies, no matter how well designed and enforced, can provide only reasonable, not absolute, assurance that the policies' objectives are being achieved. Because of the inherent limitations in all control systems and policies, there can be no assurance that our policies will prevent deliberate acts by persons attempting to violate or circumvent them. Notwithstanding the foregoing limitations, management believes that our policies are reasonably effective in achieving their purposes.

39. These statements were materially false and misleading because, at the time they were made, Defendants were using RCI's strip clubs to facilitate the Tax Fraud Scheme, repeatedly bribing Plunkett with private dances and other benefits at RCI-owned strip clubs. The very risks the policies purported to mitigate had already materialized through Defendants' own illegal conduct, and Defendants had no reasonable basis to represent that RCI's policies were "reasonably effective."

40. **Internal Controls Statements.** Although the RCI 10-Ks disclosed that the Company's internal control over financial reporting was not effective due to enumerated material weaknesses, they represented that the identified weaknesses were limited to specified matters, none of which related to the accounting for contingent liabilities that are the subject of the Tax Fraud Scheme. For fiscal 2020, the material weakness related to "the proper design and implementation of controls over our income tax provision"; for fiscal 2021, weaknesses over the

impairment of goodwill and long-lived assets; for fiscal 2022, weaknesses over accounting for business combinations; and for fiscal 2023 and 2024, weaknesses over business combinations, impairment, and information technology general controls. The RCI 10-Ks and 10-Qs further represented that, other than the enumerated changes, "there have been no other changes in our internal control over financial reporting" that materially affected, or were reasonably likely to materially affect, the Company's internal control over financial reporting.

41. These statements were materially false and misleading because they portrayed the Company's internal control weaknesses as confined to the enumerated matters and failed to disclose an additional, then-existing material weakness in the Company's internal controls over financial reporting related to accounting for contingent liabilities, a weakness that resulted from the failure of the Company's controls to detect or prevent the Tax Fraud Scheme perpetrated by Langan and Chhay.

42. **Accounting Policies and GAAP Statements.** The RCI 10-Ks represented that RCI's financial statements were "prepared in accordance with accounting principles generally accepted in the United States (GAAP)" and that RCI "evaluate[d] these accounting policies, assumptions, estimates and judgments" on "a regular basis" "to ensure that our financial statements are presented fairly and in accordance with GAAP." The RCI 10-Ks further stated that "[t]he accounts are maintained and the consolidated financial statements have been prepared using the accrual basis of accounting in accordance with [GAAP]," and described RCI's revenue recognition policy as follows:

> The Company recognizes revenue from the sale of alcoholic beverages, food and merchandise, service and other revenues at the point-of-sale upon receipt of cash, check, or credit card charge, net of discounts and promotional allowances based on consideration specified in implied contracts with customers. ***Sales and liquor taxes collected from customers and remitted to governmental authorities are presented on a net basis in the accompanying consolidated statements of operations.*** The

> Company recognizes revenue when it satisfies a performance obligation (point in time of sale) by transferring control over a product or service to a customer.

43. These statements were materially false and misleading because, at the time they were made, Defendants knowingly failed to accrue at least $8 million in sales tax liabilities arising by operation of law on the sale of Dance Dollars and the associated surcharge, improperly recognized revenue that included sales tax RCI was not entitled to retain, and mischaracterized bribe payments as legitimate business expenses. As a result, RCI's financial statements did not conform with GAAP.

44. **SOX Certifications.** In connection with each of the RCI 10-Ks and 10-Qs, Langan and Chhay executed SOX certifications attesting that the reports did "not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made . . . not misleading," that the financial statements "fairly present in all material respects the financial condition, results of operations and cash flows" of RCI, and that they had disclosed to RCI's auditors and audit committee "[a]ll significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting" and "[a]ny fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting."

45. These certifications were materially false and misleading because Langan and Chhay were themselves participating in the Tax Fraud Scheme, knew the financial statements did not fairly present RCI's financial condition, and failed to disclose both the material fraud involving management and the then-existing material weakness in accounting for contingent liabilities.

46. **Code of Ethics.** The RCI 10-Ks incorporated RCI's Code of Ethics, which required its principal executive and senior financial officers, including Langan and Chhay, to, among other things, "Comply with applicable governmental laws, rules, and regulations," to "Provide

information that is full, fair, accurate, complete, objective, relevant, timely, and understandable" to the Board, the SEC, and the public, and to "promptly report to the Chairman of the Audit Committee . . . any information you might have concerning evidence of a material violation of the securities or other laws, rules or regulations applicable to the Company" and "any fraud . . . that involves management."

47. These statements were materially false and misleading because Langan and Chhay were, at the time, personally participating in the Tax Fraud Scheme, violating governmental laws, misrepresenting material facts, and concealing from the Audit Committee both the fraud and the material violations of law occurring at RCI's operations.

**D. The Truth Emerges**

48. The truth began to emerge on May 30, 2024, when the financial newsletter The Bear Cave reported that RCI's New York City club had been raided. On this news, RCI's stock price fell 5.8%, from a closing price of $45.68 on May 29, 2024, to $43.01 on May 30, 2024.

49. On August 8, 2024, RCI filed its quarterly report confirming that, on or about May 29, 2024, the New York State Attorney General and the DTF had executed search warrants on RCI's Houston headquarters, three New York clubs, and the mobile phones of three individuals, including two executive officers. The Company also revealed that it had received a subpoena from the New York State Attorney General for "documents and other information with respect to certain clubs in New York and Florida," and RCI stated that "[t]he investigation appears to be related to the Company's New York State tax filings and possible entertainment benefits provided to . . . DTF personnel." Moreover, a non-executive was placed on administrative leave pending an internal review.

50. On RCI's August 8, 2024 earnings call, in response to a question about a report describing the raids, Langan stated, "I cannot make any comments on [] any type of ongoing

investigation . . . . But there are disclosures in the 10-Q if you want to see," while assuring investors that "you'll see that [the Bear Cave] was a little off base on accusations [] he made."

51. On August 11, 2025, RCI disclosed that it had received a second subpoena from the New York Attorney General and a subpoena from the SEC seeking documents related to the New York investigation.

52. Then, on September 16, 2025, at approximately 3:30 p.m. EST, the New York Attorney General announced and unsealed the Indictment, revealing that RCI executives had bribed a DTF auditor to avoid paying over $8 million in sales taxes from 2010 to 2024, and that the trips and bribes were "authorized, directed, and overseen by" Langan and Chhay, among others. On this news, RCI common stock fell 16% on September 16, 2025 and an additional 10% on September 17, 2025.

**E. Events After the Class Period Confirm the Fraud**

53. On November 28, 2025, RCI announced that Langan and Chhay were stepping down as CEO and CFO, respectively, but confirmed that both would remain employed and would continue to receive the same compensation and continue to vest in their previously awarded stock options. On January 29, 2026, Langan resigned as Chairman of the Board but remained a director.

54. On March 19, 2026, after twice notifying investors that it could not timely file its annual report, RCI belatedly filed its fiscal 2025 Form 10-K. In that filing, RCI at last admitted a material weakness related to "ineffective design and operation of controls, which include management review controls," over the accounting for "contingent liabilities," thereby confirming the previously concealed internal-control failure that had allowed the Tax Fraud Scheme to persist. That same day, RCI disclosed that it had recorded a legal reserve of approximately $9 million, which its then-CEO admitted had "drastically affected" profitability for the fourth quarter of fiscal 2025.

### F. The Compensation Committee's Failure to Forfeit and the Board's Failure to Terminate for Cause

55. Langan and Chhay had been criminally indicted for orchestrating a decade-long fraud against RCI. Their own words were quoted verbatim in the Indictment and were used to establish that they personally directed the scheme and knew that RCI owed the taxes it was evading.

56. Notwithstanding this, the Board did not terminate either Langan or Chhay for cause.

57. Under Langan's employment agreement, effective September 1, 2024, Langan is paid an annual base salary of $1,700,000; under Chhay's employment agreement, effective August 28, 2023, Chhay is paid an annual base salary of $600,000. By declining to terminate Langan and Chhay for cause despite their indictment, the Board caused RCI to continue paying these salaries and other compensation to fiduciaries who had defrauded the Company. For fiscal 2025 which ended on September 30, 2025, Langan received $1,990,503 in compensation ($1.7 million base salary and about $280,000 in IRA matching contributions, automobile expenses, and personal aircraft) and Chhay received $672,241 in compensation ($600,000 base salary and about $66,000 in other compensation).

58. The Board's failure to terminate Langan and Chhay also preserved the continued vesting of their stock options. Under Section 5(f) of the 2022 Plan, unvested options terminate upon the last day of a participant's employment. According to the proxy statement filed on July 7, 2026, Langan and Chhay each had 10,000 unvested options with an exercise price of $100 per share. Langan's and Chhay's options have continued to vest only because the Board did not terminate their employment.

59. Independent of the failure to terminate Langan and Chhay for cause, the Compensation Committee possessed an express contractual right under Section 17 of the 2022

Plan to force the forfeiture of Langan's and Chhay's outstanding options, including exercised options for which the Company had not yet delivered a stock certificate, upon a majority finding that Langan and Chhay had engaged in "fraud . . . commission of a felony, or proven dishonesty in the course of [their] employment . . . which conduct damaged the Company." The Indictment charges Langan and Chhay with precisely such conduct and therefore supplied ample basis for that finding. The Compensation Committee nonetheless refused to exercise the forfeiture right and instead allowed the options to continue vesting, conferring an ongoing benefit on two indicted fiduciaries at the Company's direct expense.

60. The continued vesting of the options causes direct harm to RCI because they confer an ongoing benefit to Langan and Chhay years after the wrongdoing occurred. Under Section 2(v) of the 2022 Plan, the option period runs up to ten years from grant, allowing Langan and Chhay to profit from options that should have been cancelled. The options are underwater today, but if RCI's stock price exceeds $100 over the coming years, then Langan and Chhay would be able to profit from options that should have been cancelled following their indictments.

## VI. DAMAGES TO THE COMPANY

61. As a direct and proximate result of the Individual Defendants' misconduct, RCI has been seriously harmed and will continue to be harmed. Such harm includes, but is not limited to:

a. at least $8 million in unpaid New York sales taxes, plus interest and penalties;

b. the approximately $9 million legal reserve RCI was forced to record;

c. fines, penalties, and other liabilities arising from the Indictment and the New York Attorney General and SEC investigations;

d. legal fees and costs incurred in connection with the criminal proceedings, the government investigations, and the Securities Class Action

e. any amounts paid to satisfy or settle the Securities Class Action;

f. compensation, benefits, and stock option value paid to and vested by Langan and Chhay notwithstanding their misconduct; and

g. the costs of remediating RCI's internal control deficiencies.

62. In addition, RCI's business, goodwill, and reputation with regulators, business partners, and shareholders have been gravely impaired. As a result of having been criminally indicted for a decade-long fraud and bribery scheme, RCI will suffer from a "liar's discount" in the capital markets, impairing its ability to raise capital on favorable terms.

## VII. DERIVATIVE AND DEMAND REFUSAL ALLEGATIONS

63. Plaintiff brings this action derivatively in the right and for the benefit of RCI to redress injuries suffered, and to be suffered, by RCI as a direct result of the wrongdoing alleged herein. RCI is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

64. Plaintiff will adequately and fairly represent the interests of RCI in enforcing and prosecuting its rights.

65. Plaintiff has continuously been a shareholder of RCI at all times relevant to the wrongdoing complained of herein and is a current RCI shareholder.

66. On April 6, 2026, Plaintiff served the Demand on the Board, as required by Texas law, demanding that the Board investigate and take legal action to remedy the breaches of fiduciary duty and other violations of law described herein. A true and correct copy of the Demand is attached hereto as Exhibit 2. The Demand identified the Tax Fraud Scheme, the Indictment, and the continued compensation paid to Langan and Chhay and the vesting of their stock options after the Indictment. The Demand demanded that the Board investigate whether any of RCI's officers and directors committed non-exculpable breaches of fiduciary duty or other violations of applicable law in connection with those allegations.

67. Under Texas law, once a shareholder makes a demand, the board must conduct a good-faith, reasonable investigation into the allegations by disinterested and independent directors and determine whether pursuing the demanded litigation is in the best interests of the corporation. A board's refusal of a demand is not entitled to deference where the refusal was not the product of a good-faith and reasonable investigation by disinterested and independent directors.

68. The Board wrongfully refused the Demand. More than 90 days have elapsed since the Demand was served on April 6, 2026, and the Board has not conducted any good-faith or independent investigation into the allegations. The Board did not appoint a special litigation committee of disinterested and independent directors, did not retain independent counsel or advisors to evaluate the Demand, and did not issue any determination that the Company's officers and directors discharged their fiduciary duties. To the contrary, the Company has publicly dismissed the Indictment as "baseless."

69. **A Majority of the Board Was Not Disinterested or Independent.** A director is not disinterested or independent for purposes of considering a demand where the director faces a substantial likelihood of liability for the conduct alleged or is beholden to an interested party. Langan faces a substantial likelihood of liability because he personally orchestrated the Tax Fraud Scheme and caused RCI to issue the false and misleading statements alleged herein. He is also a defendant in the Securities Class Action and a defendant in the Indictment. Langan cannot disinterestedly consider a demand to investigate and pursue claims against himself.

70. The remaining Director Defendants are likewise incapable of impartially considering the Demand. Reese has served alongside Langan as an executive officer and director since 1999 and is beholden to him. Barabash, Martin, Priaulx, and Lirot each face a substantial likelihood of liability for the breaches regarding allowing Langan and Chhay to wrongfully retain

compensation and for the failing to terminate Langan and Chay for cause. All of them are beholden to Langan, who has controlled RCI as its CEO, President, and (until January 29, 2026) Chairman since 1999 and who owns nearly 10% of the voting power of the Company. The Board's public characterization of the Indictment as "baseless" further demonstrates its inability and unwillingness to impartially evaluate the Demand.

71. **The Securities Class Action Does Not Excuse the Board's Failure to Act.** The pendency of the Securities Class Action does not excuse the Board's failure to act on the Demand. The Securities Class Action asserts claims against the Company as a defendant, whereas this derivative action seeks to hold the Individual Defendants personally liable for the harm they caused the Company. These actions are distinct, and the Securities Class Action does not relieve the Board of its independent obligation under Texas law to evaluate whether the Company's own officers and directors committed non-exculpable breaches of their fiduciary duties.

72. For the foregoing reasons, the Board's refusal of the Demand was not a valid exercise of business judgment and constitutes a wrongful refusal. Plaintiff therefore has standing to prosecute this action on behalf of RCI.

## VIII. CLAIMS FOR RELIEF

### COUNT I

### Against All Individual Defendants for Breach of Fiduciary Duty

73. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

74. Each Individual Defendant owed and owes to RCI the duty to exercise good faith, loyalty, care, and candor in the management and administration of RCI's business and affairs, particularly with respect to matters as fundamental as compliance with the law and the accuracy of the Company's public disclosures and financial statements.

75. The Individual Defendants breached these duties. Langan and Chhay personally orchestrated, directed, and concealed the Tax Fraud Scheme; caused RCI to violate New York tax law, to bribe a government auditor, and to falsify its books and records; caused RCI to issue the materially false and misleading statements alleged herein; and executed false SOX certifications. The Director Defendants failed to exercise reasonable oversight of the Company's legal compliance, internal controls, and public disclosures, and failed to take corrective action to halt the misconduct and prevent its recurrence.

76. As a direct and proximate result of the Individual Defendants' breaches of their fiduciary duties, RCI has sustained and continues to sustain significant damages, including direct monetary damages, exposure to liability from the Indictment, the government investigations, and the Securities Class Action, and the loss of goodwill in the capital markets. The Individual Defendants are liable to the Company therefor.

77. Plaintiff, on behalf of RCI, has no adequate remedy at law.

## COUNT II

**Against Defendants Barabash, Martin, Priaulx, and Lirot (Forfeiture), and Against Defendants Reese, Barabash, Martin, Priaulx, and Lirot (Failure to Terminate for Cause), for Breach of Fiduciary Duty**

78. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

79. As directors and members of the Compensation Committee, Defendants Barabash, Martin, Priaulx, and Lirot owed RCI fiduciary duties of good faith and loyalty in administering the Company's executive compensation and the 2022 Plan. The Indictment charged Langan and Chhay with fraud, felonies, and dishonesty committed in the course of their employment that damaged the Company, which was supported by substantial evidence including Langan's and Chhay's own emails. These Defendants had the express right and the duty to exercise the forfeiture

power under Section 17 of the 2022 Plan and to cause the forfeiture of Langan's and Chhay's outstanding options. In bad faith and in conscious disregard of their duties, and because they were beholden to Langan, these Defendants refused to exercise that forfeiture right and instead allowed the options to continue vesting, conferring an ongoing benefit on Langan and Chhay at RCI's expense.

80. As directors, Defendants Reese, Barabash, Martin, Priaulx, and Lirot owed RCI fiduciary duties of good faith and loyalty with respect to the retention of the Company's senior executives. Even though Langan and Chhay had been criminally indicted for a decade-long fraud against the Company, these Defendants, in bad faith and in conscious disregard of their duties, and because they were beholden to Langan, failed to terminate Langan and Chhay for cause. As a result, RCI continued to pay Langan and Chhay full compensation and their stock options continued to vest, to the Company's detriment.

81. These breaches were not the product of a valid exercise of business judgment, were committed in bad faith and with conscious disregard of the Company's interests, and are therefore non-exculpable. As a direct and proximate result, RCI has sustained and continues to sustain damages, including the compensation wrongfully conferred on Langan and Chhay and retained options that should have been cancelled. These Defendants are liable to the Company therefor.

82. Plaintiff, on behalf of RCI, has no adequate remedy at law.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of RCI, demands judgment as follows:

A. Declaring that Plaintiff may maintain this action on behalf of RCI and that Plaintiff is an adequate representative of the Company;

B. Declaring that the Individual Defendants have breached their fiduciary duties to RCI;

C. Awarding, against the Individual Defendants and in favor of the Company, the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties;

D. Directing RCI to take all necessary actions to reform and improve its corporate governance and internal procedures, including a proposal to strengthen the Company's legal and tax-compliance controls; a proposal to strengthen the Board's oversight of internal controls over financial reporting; a proposal to strengthen the Company's oversight of its public disclosures; and a proposal to strengthen the Compensation Committee's administration of executive compensation, including the exercise of forfeiture and clawback rights;

E. Awarding to RCI restitution from the Individual Defendants, and ordering disgorgement of all compensation, benefits, and stock option value wrongfully obtained or retained by Langan and Chhay, including the forfeiture of their outstanding options under the 2022 Plan;

F. Awarding to Plaintiff the costs and disbursements of this action, including reasonable attorneys', accountants', and experts' fees, costs, and expenses; and

G. Granting such other and further relief as the Court deems just and proper.

## X. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 23, 2026

Respectfully submitted,

**SPONSEL MILLER PLLC**

*/s/ Thane Tyler Sponsel III*
Thane Tyler Sponsel III
Texas Bar No. 24056361
Federal ID No. 690068
520 Post Oak Blvd., Suite 310

Houston, Texas 77027
Telephone: (713) 892-5400
Facsimile: (713) 892-5401
sponsel@smglawgroup.com

*Liaison Counsel for Plaintiff Douglas Snyder*

GLANCY PRONGAY WOLKE & ROTTER LLP
Benjamin I. Sachs-Michaels
745 Fifth Avenue, Fifth Floor
New York, New York 10151
Telephone: (212) 935-7400
bsachsmichaels@glancylaw.com

Robert V. Prongay
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
rprongay@glancylaw.com
prajesh@glancylaw.com

**LAW OFFICE OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Counsel for Plaintiff Douglas Snyder*

**VERIFICATION**

I, Douglas Snyder, do hereby verify that I am a holder of stock of RCI Hospitality Holdings, Inc., and was a holder of such stock at the time of the wrongs complained of in the foregoing Verified Shareholder Derivative Complaint ("Complaint"). I have authorized the filing of the Complaint. I have reviewed the Complaint. All of the averments contained in the Complaint regarding me are true and correct upon my personal knowledge and, with respect to the remainder of the averments, are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed by:
Douglas Snyder
B6B4F8DEB8854D5...

Date: 7/13/2026

Douglas Snyder